1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11  DIANE GOINS and WESLEY                      No.  1:13-cv-01245-DAD-SKO
    RENTFROW,
12
                 Plaintiffs,
13                                              ORDER GRANTING DEFENDANTS'
         v.                                     MOTION FOR PARTIAL SUMMARY
14                                              JUDGMENT
    COUNTY OF MERCED, MERCED
15  COUNTY DISTRICT ATTORNEY, and               (Doc. No. 89)
    MERLE WAYNE HUTTON,
16
                 Defendants.
17

18

19        This action arises from alleged employment discrimination, harassment, and retaliation at

20  the Merced County District Attorney's Office.  Plaintiffs Diane Goins and Wesley Rentfrow

21  bring this action against defendants County of Merced ("County"), Merced County District

22  Attorney's Office ("DAO"),[1] and Merle Wayne Hutton, alleging violations of Title VII of the

23  Civil Rights Act of 1964 and the California Fair Employment and Housing Act ("FEHA").

24  Before the court is a motion for partial summary judgment brought on behalf of defendants

25  County and DAO's.  (Doc. No. 89.)  On April 5, 2016, the motion came before the court for

26

27  _____
    [1]  Defendants contend that the proper party in this suit, and the one appearing in this motion, is
28  the "Merced County District Attorney's Office."  The court will address the Merced County
    District Attorney's Office as such.

                                              1

1    hearing.  Attorney Roger S. Matzkind appeared on behalf of defendants County and DAO.

2    Attorney Laurie Bell Schrum appeared on behalf of defendant Hutton.  Attorney Kay McKenzie

3    Parker appeared on behalf of plaintiffs.  After oral argument, defendants' motion was taken under

4    submission.  For the reasons stated below, the motion for partial summary judgment is granted.

5                                              **BACKGROUND**

6    **A.     Factual Allegations**[2]

7           Plaintiffs Diane Goins and Wesley Rentfrow were employees of the County and the DAO.

8    (Compl. 4:15–22.)  Plaintiff Goins began her work as an Investigative Assistant in November

9    2006.  (*Id.*)  Plaintiff Rentfrow began his work as a Criminal Investigator in April 2007.  (*Id.*)

10   Defendant Merle Wayne Hutton was their direct supervisor.  (*Id.*)

11          1.      Complaints of Sexual Harassment

12          As alleged in the complaint, throughout the duration of plaintiff Goins's employment,

13   from November 2006 through July 2011, defendant Hutton subjected her and other female co-

14   workers to sexual harassment, including unwanted sexual comments, touching, and requests.

15   (Compl. 4:23–5:2.)  In August 2007 and on several occasions through 2009, Goins reported the

16   harassment to officials at the DAO—including District Attorney Larry Morse II, Chief

17   Investigator Daniel Murphy, and Chief Investigator Patrick Lunney.  (Compl. 5:3–9; *see also*

18   Goins Interrog. Resps. at 13–18.)  Goins was assured something would be done, but no formal

19   action was taken in response to her requests, and the harassment continued.  (Compl. 5:8–9;

20   Goins Interrog. Resps. at 13–18.)  By December 2008, plaintiffs Goins and Rentfrow began

21   dating.  (Compl. 5:17.)  In response to Goins's reports of harassment and her relationship with

22   Rentfrow, defendant Hutton retaliated against her by excluding Goins from meetings and making

23   _____

24   [2]  The relevant facts that follow are derived primarily from the complaint (Doc. No. 1)
     ("Compl."); 'the deposition of Diane Goins, dated May 15, 2015 (Doc. No. 90-2) ("Goins Dep.");
25   the deposition of Wesley Rentfrow, dated May 22, 2015 (Doc. No. 90-7) ("Rentfrow Dep.");
     plaintiff Goins's interrogatory responses (Doc. No. 90-4) ("Goins Interrog. Resps."); plaintiff
26   Rentfrow's interrogatory responses (Doc. No. 90-3) ("Rentfrow Interrog. Resps."); the
     declaration of Marci Barrera (Doc. No. 90-5) ("Barrera Decl."); and the declaration of Jeannette
27   Pacheco (Doc. No. 90-6) ("Pacheco Decl.").  In addition, defendants have filed a separate
     statement of undisputed material facts in support of the instant motion (Doc. No. 91) ("DUMF"),
28   to which plaintiffs responded in their opposition (*see* Doc. No. 96 ("Opp'n") at 2–6).

false statements about her.  (Compl. 5:19–21; *see also* Goins Interrog. Resps. at 13–18.)  In September 2009, Goins filed a discrimination charge with the California Department of Fair Employment and Housing ("DFEH") and the Equal Employment Opportunity Commission ("EEOC").  (Compl. 5:23–26.)

Beginning in November 2008 and throughout most of his employment, plaintiff Rentfrow opposed Hutton's sexual harassment of Goins.  (*Id.* 5:10–13.)  After Rentfrow complained of the alleged sexual harassment, defendant Hutton retaliated against him by imposing unwarranted discipline, issuing poor performance reviews, communicating false statements and untruths, and assigning unnecessary and burdensome job duties.  (*Id.* 5:14–16.)

In January 2010, plaintiff Goins began medical leave.  (*Id.* 5:27)  During this time, defendant Hutton retaliated against Goins by misrepresenting to other employees that Goins was absent without leave, miscalculating the length of her leave, threatening her with termination, and referring to her and Rentfrow as "occupational terrorists."  (*Id.* 5:27–6:3.)  When plaintiff Goins returned to work, defendant Hutton "frequently glared at her, refused to speak to her, refused to permit her to attend some meetings, would not authorize the issuance of a department vehicle to her, and refused to permit her to work flexible hours, and communicated false statements and untruths about her."  (*Id.* 6:3–6.)

2.    Administrative Proceedings Against Defendant Hutton[3]

In October 2009, District Attorney Morse and Chief Investigator Lunney decided to issue a notice of intent to suspend defendant Hutton.  (Barrera Decl. Ex. 9, at 4.)  The decision to suspend Hutton was based on allegations of sexual harassment in three separate incidents:  (1) of Margarita Gonzalez, another DAO employee, (2) of Diane Goins relating to claims made in her EEOC complaint, and (3) of Wesley Rentfrow relating to a December 2008 incident.  (*See id.* at 3–5.)  As the result of a hearing on November 4, 2009, the County and the DAO imposed a two-

---

[3]  The evidence presented in connection with this motion concerning the District Attorney's Office's formal investigation of defendant Hutton is incomplete.  In fact, as the parties acknowledged at the hearing, the only evidence before the court that explicitly describes that investigation, and the results thereof, is found in an arbitrator's subsequent findings in Hutton's appeal of his suspension.  (*See* Barrera Decl. Ex. 9.)

1    day suspension on Hutton.  (*Id.* at 5.)  Defendant Hutton filed an administrative appeal, and after

2    a hearing on October 15, 2010, an independent arbitrator, concluding the suspension was

3    unwarranted, reversed.  (*Id.* at 10.)

4         Plaintiffs Goins and Rentfrow provided testimony as part of Hutton's administrative

5    appeal.  (Compl. 6:7–9; Goins Dep. 166:12–17; Rentfrow Dep. 105:11–106:5; *see also* Barrera

6    Decl. Ex. 9.)  In connection with these proceedings, defendant Hutton submitted a written

7    response that included false statements about Rentfrow.  (Compl. 6:9–15.)  In March 2011,

8    Rentfrow filed charge with the DFEH and the EEOC against the County and the DAO, alleging

9    that he was retaliated against for reporting and opposing the sexual harassment of Goins, as well

10   as for his testimony in connection with Hutton's administrative appeal.  (*Id.* 6:16–18.)

11        3.    Terminations of Goins and Rentfrow:  2011 and 2012 Reductions in Force

12        In 2011 and 2012, the County considered and approved the DAO's annual budget.  (*See*

13   *generally* Barrera Decl. ¶¶ 9–11; DUMF ¶¶ 6–12.)  These budget decisions resulted in

14   elimination of several filled and vacant positions, or a reduction in force ("RIF"), which included

15   positions filled by Goins and Rentfrow.

16        On June 28, 2011, the County, through its Board of Supervisors, approved a budget for

17   fiscal year 2011/2012 that imposed a twenty-percent reduction of general fund money for each

18   county department, including the DAO.  (Barrera Decl. ¶ 10.)  With respect to the DAO, the

19   County considered alternative budget proposals from the County Executive Office ("CEO") and

20   DAO, both of which provided for the elimination of a filled Investigative Assistant position

21   (identified as Position No. 37).  (Barrera Decl. ¶ 10; *see also id*. at 30.)  The County approved the

22   CEO's proposal and eliminated Position No. 37, effective July 31, 2011.  (Barrera Decl. at 30,

23   46.)  At the time of the County's decision, another Investigative Assistant, Melinda Jones, held

24   Position No. 37.  (Pacheco Decl. ¶ 6.)  In accordance with its RIF policies, the County

25   redesignated Diane Goins to Position No. 37 because she held the classification of Investigative

26   Assistant and had less seniority than Ms. Jones.  (*Id.*)  The County notified Goins of its decision

27   on July 28, 2011 and eliminated Position No. 37 on July 31, 2011.  (*Id.*)

28   /////

                                                4

The County's June 28, 2011 decision also resulted in the elimination of a filled District Attorney Investigator position.  (Barrera Decl. at 30.)  At the time of this decision, plaintiff Rentfrow, who was classified as a District Attorney Investigator, had more seniority than another District Attorney Investigator, Darryl Davis.  (Pacheco Decl. ¶ 7.)  In accordance with its RIF policies, the County terminated Mr. Davis and deleted this position on July 31, 2011.  (*Id.*)

Thereafter, on March 27, 2012, the County, through its Board of Supervisors, authorized elimination of one filled District Attorney Investigator position, as a result of state funding cuts.  (Barrera Decl. ¶ 11; *see also id.* at 49, 57, 65.)  At the time of this decision, plaintiff Rentfrow had the least seniority of those classified as District Attorney Investigator.  (Pacheco Decl. ¶ 8.)  In accordance with its RIF policies, the County terminated Rentfrow and deleted this position on April 22, 2012.  (*Id.*)

Both plaintiffs were advised of their rights to appeal their terminations and rights to seek reinstatement and reemployment.  (DUMF ¶ 15; Opp'n at 3; Barrera Decl. ¶¶ 13–14, Exs. 7, 8.)  Neither plaintiff appealed their termination.  (DUMF ¶ 15; Opp'n at 3; Barrera Decl. ¶¶ 13–14.)  Pursuant to the County's policy, plaintiffs were advised to submit a generic application, including a résumé and supporting documentation, in order to be placed on a reemployment list for the eighteen-month period following their respective terminations.  (*See* Barrera Decl. Exs. 7, 8.)  Individuals who did not submit a generic application were not considered for reemployment and would need to apply for positions under normal hiring rules.  Plaintiff Rentfrow submitted a generic application; plaintiff Goins did not.  (*Id.* ¶¶ 7, 10.)

**B.    Procedural History**

Plaintiffs commenced this action on August 9, 2013.  Their complaint states claims against defendants alleging violations of Title VII and FEHA.  On September 24, 2013, defendants County and DAO filed a joint motion for more definite statement and motion to dismiss.  (Doc. No. 13.)  That same day, defendant Hutton filed a motion to dismiss.  (Doc. No. 12.)  On October 1, 2013, defendant Hutton filed an amended motion to dismiss.  (Doc. No. 17.)  On July 9, 2014, the court issued an order denying the motion brought by defendants County and DAO and granting in part the motion brought on behalf of defendant Hutton.  (Doc. No. 31.)

5

1  Regarding the surviving claims, the court noted the following:

2  > The Title VII claim remains as follows: Goins against the County
   > and the DA for discrimination, harassment, and retaliation; and
3  > Rentfrow against the County and the DA for retaliation.

4  * * *

5  > The FEHA claim remains as follows: Goins against the County and
   > the DA under theories of discrimination, harassment, retaliation,
6  > and failure to prevent discrimination, harassment, and retaliation;
   > Goins against Hutton under a theory of harassment; and Rentfrow
7  > against the County and the DA under theories of retaliation and
   > failure to prevent retaliation.

8

9  (*Id.* at 9–10.)

10      On February 11, 2016, defendants County and DAO filed the motion for partial summary

11  judgment now pending before the court. (Doc. Nos. 89, 90 ("Mot.").) On March 22, 2016,

12  defendant Hutton filed a joinder in the motion. (Doc. No. 95.) On March 24, 2016, plaintiffs

13  filed an untimely opposition.[4] (Doc. No. 96.) On the same day and in support of their opposition,

14  plaintiffs filed a request for judicial notice of two documents. (Doc. No. 99.) On March 29,

15  2016, defendants filed their replies. (Doc. Nos. 106, 108.)

16  **LEGAL STANDARD**

17      Summary judgment is appropriate when the moving party "shows that there is no genuine

18  dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

19  Civ. P. 56(a).

20  /////

---

21  [4] The hearing on the instant motion was originally set for March 15, 2016. The court
22  subsequently granted plaintiffs' *ex parte* request to continue the hearing, and reset the hearing for
    April 5, 2016. (Doc. Nos. 92–93.) The parties were directed to file opposition and reply briefs in
23  accordance with Local Rule 230. (*See* Doc. No. 93.) The court notes that plaintiffs' opposition
    (Doc. No. 96) was filed on March 24, 2016, two days after their filing deadline under the Local
24  Rules. Plaintiffs' counsel continued to file declarations, exhibits, and other supporting documents
    on March 24, 2016 (*see* Doc. Nos. 97–103), March 25, 2016 (*see* Doc. No. 104), and March 29,
25  2016 (*see* Doc. No. 105)—just hours before defendants submitted their reply briefs. Because the
    court must reach the merits of the instant motion for partial summary judgment, it declines to
26  reject or strike plaintiffs' late-filed opposition. Nevertheless, plaintiffs have provided very little
    relevant evidence in opposition to assist the court in examining the issues addressed below.
27  Plaintiffs' counsel is strongly urged to adhere to the Local Rules regarding all future proceedings
    in this action. A failure to do so may result in the imposition of sanctions.
28

6

In summary judgment practice, the moving party "initially bears the burden of proving the absence of a genuine issue of material fact." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that the adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A), (B). When the non-moving party bears the burden of proof at trial, "the moving party need only prove that there is an absence of evidence to support the non-moving party's case." *Oracle Corp.*, 627 F.3d at 387 (citing *Celotex*, 477 U.S. at 325.); *see also* Fed. R. Civ. P. 56(c)(1)(B). Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *See Celotex*, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment . . . is satisfied." *Id.* at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. *See* Fed. R. Civ. P. 56(c)(1); *Matsushita*, 475 U.S. at 586 n.11; *Orr v. Bank of America, NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002) ("A trial court can only consider admissible evidence in ruling on a motion for summary judgment."). The opposing party must demonstrate that the fact in

1   contention is material, i.e., a fact that might affect the outcome of the suit under the governing

2   law, *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *T.W. Elec. Serv., Inc. v.*

3   *Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is

4   genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving

5   party. *See Wool v. Tandem Computers, Inc.*, 818 F.2d 1433, 1436 (9th Cir. 1987).

6        In the endeavor to establish the existence of a factual dispute, the opposing party need not

7   establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual

8   dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at

9   trial." *T.W. Elec. Serv.*, 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce

10  the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"

11  *Matsushita*, 475 U.S. at 587 (citations omitted).

12        "In evaluating the evidence to determine whether there is a genuine issue of fact," the

13  court draws "all inferences supported by the evidence in favor of the non-moving party." *Walls v.*

14  *Central Costa Cty. Transit Auth.*, 653 F.3d 963, 966 (9th Cir. 2011). It is the opposing party's

15  obligation to produce a factual predicate from which the inference may be drawn. *See Richards*

16  *v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244–45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898, 902

17  (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than

18  simply show that there is some metaphysical doubt as to the material facts. . . . Where the record

19  taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no

20  'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted).

21                                    **DISCUSSION**

22        Defendants move for partial summary judgment on two overlapping grounds. First,

23  defendants move for judgment in their favor as to all aspects of plaintiffs' retaliation claims in

24  connection with the termination of plaintiffs Goins and Rentfrow.[5] Specifically, defendants argue

---

25  [5] Defendants style this request as a broader one for an "order that neither plaintiff suffered, or

26  may claim, pecuniary damages." (Mot. at 4.) However, defendants' arguments ultimately lie in
    the substance of plaintiffs' claims. (*See id.* at 6) ("[T]his motion addresses the lack of any causal

27  link between the protected activity and the employer's actions. As a result of this, there were no
    lost employment related pecuniary damages."). Moreover, whether plaintiffs may claim

28  pecuniary damages of any kind clearly remains in dispute.

1    that there is no causal connection between plaintiffs' alleged protected activity and defendants'

2    decision to terminate them.  (Mot. at 6.)  Alternatively, defendants County and DAO contend that

3    their reason for terminating plaintiffs was legitimate and not a pretext for retaliation.  (*See id.* at

4    7–8.)  Second, defendants move for judgment in their favor as to all of plaintiff Rentfrow's claims

5    against them—including claims of retaliation under Title VII and FEHA, and his claim of failure

6    to prevent retaliation under FEHA.

7          As an initial matter, plaintiffs' opposition directly addresses few of the issues defendants

8    have brought forth in moving for summary judgment.  Instead, plaintiffs devote much of their

9    opposition to arguing that the motion should be considered in light of judicial estoppel and

10   preclusion principles because the parties to this case were involved in separate administrative

11   proceedings relating to defendant Hutton's alleged sexual harassment.  (*See* Opp'n at 7–9.)

12   Plaintiffs additionally seek judicial notice of particular documents.  (Doc. No. 99.)  Before

13   addressing the merits of defendants' motion, the court will first consider plaintiffs' arguments on

14   these matters.

15   **A.      Judicial Estoppel and Preclusion**

16         Plaintiffs make a generalized argument that defendants County and DAO should be

17   precluded from bringing the instant motion because they took a different position regarding

18   alleged sexual harassment by defendant Hutton in separate administrative proceedings.  (*See*

19   Opp'n at 7–8.)  "Judicial estoppel is an equitable doctrine that precludes a party from gaining an

20   advantage by asserting one position, and then later seeking an advantage by taking a clearly

21   inconsistent position."  *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 782 (9th Cir.

22   2001).  The court is unconvinced judicial estoppel has any relevance to the instant motion.  The

23   prior administrative proceedings against defendant Hutton involved allegations of sexual

24   harassment, which are not at issue in this motion.  Even to the extent any issues relating to

25   plaintiffs' retaliation claims were examined in those administrative proceedings, plaintiffs have

26   not identified what issues or claims, decided then, are now before this court.

27         In addition, plaintiffs argue that the result of the Hutton's administrative appeal should not

28   preclude them from bringing claims against defendants in this action.  (*See id.* at 9.)  However,

1  defendants have clearly not asserted either claim or issue preclusion in moving for summary

2  judgment in their favor.  As plaintiffs point out, the arbitrator in Hutton's administrative appeal

3  concluded there was insufficient evidence of sexual harassment presented to him.  (*See id.* at 7;

4  Barrera Decl. Ex. 9, at 10.)  That result, apparently based on a separate and more limited set of

5  facts, would not appear to have preclusive effect on, or be relevant to, the issues now before the

6  court.

7  **B.    Judicial Notice**

8        A court may take judicial notice of a fact that is not subject to reasonable dispute because

9  it can be accurately and readily determined from sources whose accuracy cannot reasonably be

10  questioned.  Fed. R. Evid. 201.

11       Plaintiffs seek judicial notice of two documents.  (Doc. No. 99.)  First, plaintiffs seek

12  judicial notice of a document entitled "EEOC Form 462 – Annual Federal Equal Employment

13  Opportunity Statistical Report of Discrimination Complaints User's Instruction Manual."

14  Plaintiffs contend that this user instruction manual is relied upon by the EEOC in calculating

15  damages, and plaintiffs submit this document "to show that by stating that they seek 'Front Pay'

16  in their Initial Disclosures and discovery documents throughout the litigation, the Plaintiffs were,

17  in fact, making detailed calculations of their requested damages."  (*Id.* at 2.)  Second, plaintiffs

18  seek judicial notice of a model jury instruction from the California Civil Jury Instructions,

19  specifically instruction VF-2505 relating to quid pro quo sexual harassment.  Plaintiffs submit

20  this document to "to show that by stating that they seek 'front pay, attorney fees, costs, emotional

21  distress damages' . . . the Plaintiffs were, in fact, making detailed calculations of their requested

22  damages."  (*Id.* at 3.)

23       The court declines to take judicial notice of either document.  The documents submitted

24  by plaintiffs do not appear relevant in any way to resolution of the defendants' motion for

25  summary judgment.  Moreover, the documents in question do not appear to state or support the

26  facts plaintiffs seek to demonstrate—i.e., that plaintiffs have been making damages calculations.

27       Below, the court will address the legal standards applicable to plaintiff's claims and

28  address defendants' motion for summary judgment.

1    **C.      Retaliation Under Title VII and FEHA**

2           1.      <u>Title VII</u>

3           Title VII prohibits retaliation by an employer "against an employee for making a charge

4    or otherwise participating in a Title VII proceeding." *Nilsson v. City of Mesa,* 503 F.3d 947, 953

5    (9th Cir. 2007).  Under § 704 of the Civil Rights Act of 1964, it is unlawful

6                   for an employer to discriminate against any of his employees . . .
                    because [the employee] has opposed any practice made an unlawful
7                   employment practice by [Title VII], or because [the employee] has
                    made a charge, testified, assisted, or participated in any manner in
8                   an investigation, proceeding, or hearing under [Title VII].

9    42 U.S.C. § 2000e-3.  "To establish a claim of retaliation, a plaintiff must prove that (1) the

10   plaintiff engaged in a protected activity, (2) the plaintiff suffered an adverse employment action,

11   and (3) there was a causal link between the plaintiff's protected activity and the adverse

12   employment action." *Poland v. Chertoff,* 494 F.3d 1174, 1179–80 (9th Cir. 2007). *See also*

13   *Stegall v. Citadel Broad. Co.,* 350 F.3d 1061, 1065–66 (9th Cir. 2003).

14          "If the plaintiff establishes a prima facie case, the burden then shifts to the defendant to

15   articulate 'a legitimate, nondiscriminatory reason for the adverse employment action.'" *Sanders*

16   *v. City of Newport,* 657 F.3d 772, 777 n.3 (9th Cir. 2011) (quoting *Fonseca v. Sysco Food Servs.*

17   *of Ariz., Inc.,* 374 F.3d 840, 849 (9th Cir. 2004)).  If the employer articulates a legitimate reason

18   for its action, the plaintiff must then show the reason given is pretextual.  *See Pottenger v.*

19   *Potlatch Corp.,* 329 F.3d 740, 746 (9th Cir. 2003).

20          2.      <u>FEHA</u>

21          California law under FEHA mirrors federal law under Title VII, and state courts have

22   looked to federal interpretations of Title VII in interpreting analogous provisions of FEHA.

23   *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1219 (9th Cir. 1998).  Like Title VII, California

24   law also prohibits retaliation by an employer against an employee.  Specifically, FEHA makes it

25   unlawful for "[f]or any employer . . . to discharge, expel, or otherwise discriminate against any

26   person because the person has opposed any practices forbidden under this part or because the

27   person has filed a complaint, testified, or assisted in any proceeding under this [Act]."  Cal. Gov't

28   Code § 12940(h).  As with retaliation claims under Title VII, California courts have held that to

                                                    11

1   establish a prima facie case of retaliation under FEHA, a plaintiff must show (1) the plaintiff

2   engaged in a protected activity; (2) the employer subjected the employee to an adverse

3   employment action; and (3) a causal link existed between the protected activity and the

4   employer's action. *Yanowitz v. L'Oreal USA, Inc.*, 36 Cal. 4th 1028, 1042 (2005) (citing

5   *Iwekaogwu v. City of Los Angeles*, 75 Cal. App. 4th 803, 814–15 (1999)).  California courts apply

6   the same Title VII burden-shifting framework to claims brought under FEHA.  *See Metoyer v.*

7   *Chassman*, 504 F.3d 919, 941 (9th Cir. 2007); *see also Yanowitz*, 36 Cal. 4th at 1042; *Guz v.*

8   *Bechtel Nat. Inc.,* 24 Cal.4th 317, 354 (2000) ("Because of the similarity between state and

9   federal employment discrimination laws, California courts look to pertinent federal precedent

10  when applying our own statutes.").

11          In addition, FEHA makes it unlawful "for an employer . . . to fail to take all reasonable

12  steps necessary to prevent discrimination and harassment from occurring" in the workplace.  Cal.

13  Gov't Code § 12940(k).  "When a plaintiff seeks to recover damages based on a claim of failure

14  to prevent discrimination or harassment she must show three essential elements:  1) plaintiff was

15  subjected to discrimination, harassment or retaliation; 2) defendant failed to take all reasonable

16  steps to prevent discrimination, harassment or retaliation; and 3) this failure caused plaintiff to

17  suffer injury, damage, loss or harm." *Leland v. City and Cty. of San Francisco,* 576 F. Supp. 2d

18  1079, 1103 (N.D. Cal. 2008).

19  **D.      Plaintiffs' Retaliation Claims in Connection with Their Terminations**

20          1.      Plaintiffs Present Sufficient Evidence to Raise a Triable Issue as to Causation

21          Defendants County and DAO argue on summary judgment that plaintiffs have failed to

22  establish causation in their prima facie case of retaliation under Title VII and FEHA, thereby

23  entitling defendants to summary judgment in their favor.  (*See* Mot. at 6.)  Specifically,

24  defendants argue that even assuming plaintiffs engaged in protected activity, no causal link exists

25  between any of those activities and defendants' decisions to terminate plaintiffs.  As to this

26  element of a retaliation claim, a plaintiff may establish a causal link between the protected

27  activity engaged in and the adverse action taken by circumstantial evidence, including the

28  employer's knowledge of the protected activity and the proximity in time between the protected

12

1   action and the adverse employment act.  *Jordan v. Clark,* 847 F.2d 1368, 1376 (9th Cir. 1988);

2   *see also Passantino v. Johnson & Johnson Consumer Prods., Inc.*, 212 F.3d 493, 507 (9th Cir.

3   2000) ("[W]hen adverse employment decisions are taken within a reasonable period of time after

4   complaints of discrimination have been made, retaliatory intent may be inferred.").

5                          a.      *Plaintiff Goins*

6           Based on the evidence presented on summary judgment, it is undisputed that as early as

7   August 2007, several DAO officials were aware of plaintiff Goins's allegations of harassment,

8   and both formal and informal efforts were undertaken to address them.  In his deposition, District

9   Attorney Morse testified that he was aware of concerns regarding Hutton's alleged behavior.

10  (Morse Dep. (Doc. No. 101-2) 12:13–13:3.)  Morse asked Sue Norris, a DAO employee, to look

11  into the matter.  (*Id.*)  Norris similarly testified that she was asked by Morse and Chief

12  Investigator Murphy to monitor the situation in August or September 2007.  (Norris Dep. (Doc.

13  No. 100-1) 16:7–9, 16:21–25, 18:4–12, 21:11–22, 22:14–23:2.)  Norris became aware of issues

14  stemming from Goins's office location with respect to Hutton's (*id.* 22:14–23:2), Hutton's

15  request that Goins remove a calendar from her office wall (*id.* 14:23–15:7), and Hutton's alleged

16  sexual harassment of Goins and others (*id.* 16:21–17:17, 18:24–19:11).  On April 9, 2008, Norris

17  wrote a letter to Morse describing the ongoing issues between Goins and Hutton.  (*Id.* 19:12–16.)

18  In the letter, Norris described a meeting with Goins and Hutton on March 17, 2008 regarding the

19  alleged harassment.  (*Id.* 27:10–19.)  Chief Investigator Lunney was also asked to investigate

20  Goins's allegations of harassment against Hutton.  (*See* Lunney Dep. (Doc. No. 101-1) 47:3–9.)

21  It is also evident the DAO was made aware of Goins's complaints to DFEH and EEOC.  Based on

22  these complaints and its own investigations, the DAO made the decision to suspend Hutton one

23  month later, in October 2009.  One year later, Goins participated in and testified against Hutton in

24  his administrative appeal proceedings.

25          Plaintiff Goins was terminated July 31, 2011, less than a year after her involvement in

26  Hutton's administrative appeal.  The decisions resulting in Goins's termination, which would

27  have implicated at least some of the same DAO officials involved in the internal investigations,

28  would have taken place earlier that year.  As a result, there is at least some circumstantial

1    evidence to support an inference that a causal link existed between plaintiff Goins's allegedly

2    protected activities and her termination.

3            Defendants primarily point to evidence of non-retaliatory budgetary reasons for

4    terminating Goins.  While these reasons are well-supported, they do not cut off any causal link—

5    the County's decision to implement budget cuts does not negate evidence supporting an inference

6    of retaliation.  Defendants further posit that nearly four years passed between the time they were

7    first made aware of the alleged harassment and Goins's termination, and nearly nine months

8    passed following her testimony in Hutton's administrative proceedings.  Defendants rely on the

9    decision in *Clark County School District v. Breeden*, 532 U.S. 268 (2001), to argue that the

10   temporal proximity between protected activity and adverse action must be "very close" to

11   establish causality.  However, *Breeden* cannot be read as holding that causality is dependent on

12   temporal proximity alone.  *See Porter v. California Dep't of Corr.*, 419 F.3d 885, 895 (9th Cir.

13   2005) ("Although a lack of temporal proximity may make it more difficult to show causation,

14   circumstantial evidence of a pattern of antagonism following the protected conduct can also give

15   rise to the inference.") (citations and internal quotations omitted).  Here, plaintiffs have presented

16   sufficient circumstantial evidence of a sequence of events occurring over several years to give

17   rise to an inference of causation.

18                    b.    *Plaintiff Rentfrow*

19          The evidence presented on summary judgment makes clear that officials in the DAO

20   became aware of plaintiff Rentfrow's complaints beginning in late 2008.  In fact, Rentfrow's

21   complaint regarding a December 2008 incident formed part of the basis for the DAO's decision to

22   terminate Hutton.  Like Goins, Rentfrow also testified in the same administrative proceedings

23   against Hutton in October 2010.  Months later, in March 2011, he filed a complaint with DFEH

24   and EEOC.  Plaintiff Rentfrow was terminated April 22, 2012.

25          As with plaintiff Goins, the court finds that there is sufficient circumstantial evidence to

26   give rise to an inference of that Rentfrow's protected activities caused defendants to terminate

27   him.  DAO officials were aware of and had reason to address Rentfrow's complaints over the

28   course of two years.  A jury could conclude some of these officials were involved in the

budgetary decisions that led to Rentfrow's termination.  Accordingly, plaintiff Rentfrow has met his burden of raising a genuine issue of material fact with respect to causation.

### 2.        However, Plaintiffs Have Failed to Present Sufficient Evidence of Pretext

For the reasons set forth above, defendants are not entitled to summary judgment in their favor due to plaintiffs' failure to make a prima facie case of retaliation.  Disputed issues of material fact preclude such a determination.  However, even where plaintiffs have made out such a prima facie case, the burden then merely shifts to the defendants.  If the employer articulates legitimate reasons for its actions, plaintiffs must then show the reason given is pretextual.  *See Pottenger,* 329 F.3d at 746.  Here, defendants have presented ample evidence that their decisions to terminate Goins and Rentfrow, respectively, were in fact the result of budget decisions made by the Board of Supervisors.  Defendants terminated plaintiffs because each was the least senior employee in his or her respective job classification when a corresponding position was eliminated.

In opposition to the pending motion for summary judgment, plaintiffs do not present any evidence disputing the County's claim that it has met its burden of providing legitimate reasons for plaintiffs' terminations.  (*Compare* DUMF ¶¶ 6–12, *with* Opp'n at 3 ("Plaintiffs do not have enough information to admit or deny or dispute this factual allegation.  And, on those grounds, therefore, they dispute it . . . .  Plaintiffs do not dispute that they were told that the layoffs were due to budgetary expenditure problems the County was experiencing.").)  In light of the defendants' non-retaliatory reason for plaintiffs' terminations, plaintiffs may be attempting to contend that the proffered reason is pretextual.  However, plaintiffs argue only that the RIF process was "unfair."  (*See, e.g.*, Opp'n at 3, Goins Supp. Decl. (Doc. No. 105) ¶¶ 3–10.)  This generalized argument of "unfairness," even if it could be supported, does not raise a genuine issue as to whether the legitimate reasons for the decisions to terminate plaintiffs proffered by defendants are pretextual.

To establish that a non-retaliatory explanation is pretext for discrimination, plaintiffs "may rely on circumstantial evidence, which . . . must be 'specific' and 'substantial' to create a genuine issue of material fact."  *Nilsson*, 503 F.3d at 954 (citation omitted).  Here, plaintiffs have

simply failed to come forward with any evidence on summary judgment to support even an inference that defendants' reasons for terminating plaintiffs is pretextual. In response to interrogatories, plaintiff Goins provided the following response regarding retaliation: "I contend that Mr. Hutton retaliated against me by reporting and opposing sex discrimination and harassment and did not make my leave available. See the summary of facts above as we believe we were pre-selected for layoff. See Exhibit 1 attached hereto." (Goins Interrog. Resps. at 4.)[6] On her declaration submitted in opposition to defendants' motion for summary judgment, Goins similarly merely states, "I was out on Family Medical Leave when I was notified that I would be RIF'd prior to my return to work. I believe the constructive discharge was retaliation for my complaining about Defendant Wayne Hutton's on-going sexual harassment of me." (Goins Supp. Decl. ¶ 3.) These statements are speculative and conclusory at best, and without any evidence of specific facts to support her claims, plaintiff Goins has failed to meet her burden of raising a genuine dispute as to pretext. *See Celotex*, 477 U.S. at 322 (summary judgment to be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial).

Similarly, in response to an interrogatory concerning his allegation of retaliation, plaintiff Rentfrow states:

> I do contend as alleged in paragraph 24 of my complaint that I believe my termination was not an alleged reduction in force, but was in retaliation for reporting and opposing sex harassment and harassment. I believe I was selected for layoff.
>
> As previously stated, I do not believe that there was a legitimate reduction in force that effected both Diane and myself. We believe that we were pre-selected for reasons of retaliation for opposition for reporting and opposing sex discrimination. (Assassins) (Discretion of Morse) See the documents produced under separate cover. See Exhibit 1 hereto."

/////

---

[6] Exhibit 1 to Goins's response includes a list of Bates numbers presumably corresponding to documents produced in this case. (Goins Interrog. Resps. at 8–10.) Defendants contend the documents referenced in this exhibit fail to create a dispute as to the County's reasons for terminating Goins. (Mot. at 7–8.) Because Goins has presented no evidence in response, the court concludes that no factual basis for pretext has been presented on summary judgment by plaintiffs.

1    (Rentfrow Interrog. Resps. at 15–16.)[7]  Moreover, in opposition to the instant motion, plaintiff

2    Rentfrow fails to identify any evidence of specific facts supporting his allegation or refuting

3    defendants' legitimate reasons for terminating him.  Because Rentfrow also fails to come forward

4    with any evidence raising a genuine dispute as to pretext, defendants are entitled to summary

5    judgment in their favor with regard to both plaintiffs' theories of retaliation in connection with

6    their terminations.  *See Celotex*, 477 U.S. at 322

7        3.    Plaintiffs Fail to Establish a Case of Retaliation in Connection with Defendants'

8              Failure to Rehire Them

9        Finally, defendants move for summary judgment regarding plaintiffs' allegations that

10   defendants subsequently retaliated against them by refusing to consider or rehire them.  To the

11   extent plaintiffs make this claim,[8] the court finds that plaintiffs have failed to come forward with

12   evidence to support a prima facie case in light of the absence of a dispute that they were

13   terminated for non-retaliatory reasons.

14       It is undisputed on summary judgment that plaintiff Goins did not submit a generic

15   application for rehire in the eighteen months following her termination.  Rather, in opposition to

16   the pending motion, she cites a record of job applications she submitted to the County during that

17   time period.  (Goins Supp. Decl. ¶¶ 5–6; *see also* Barrera Decl. ¶ 10.)  Goins also alleges that

18   other former employees were rehired during this time period despite having less seniority, in

19   some cases, then her.  (Goins Supp. Decl. ¶¶ 7–10.)  Because plaintiff Goins does not provide

20   evidence to dispute that she failed to submit a generic application, and because she does not

21   present evidence that the other named employees were rehired for jobs she applied for, Goins has

22

23   ───────────────
     [7] Like Goins's response, Exhibit 1 to Rentfrow's response includes a list of Bates numbers
24   presumably corresponding to documents produced in the case.  (Rentfrow Interrog. Resps. at 17.)
     Defendants contend these documents fail to create a dispute as to the County's reasons for
25   terminating Rentfrow.  (Mot. at 8.)  Because Rentfrow fails to present evidence in response, the
     court finds no factual basis for pretext.

26
     [8] The court finds that the plaintiffs have not alleged in their complaint an independent theory of
27   retaliation based on a failure to rehire.  However, because any such theory of recovery would be
     so closely tied to plaintiffs' allegations relating to their terminations, the court nonetheless
28   addresses this potential claim.

failed to raise a triable issue as to any theory that she was passed up for these positions.

Furthermore, for every allegation that defendants refused to rehire her in retaliation, Goins fails to

come forward with any evidence of facts from which to infer a retaliatory motive on the part of

defendants.

Plaintiff Rentfrow also fails to present evidence on summary judgment that he was

subsequently denied employment in retaliation for his protected activities.  There appears to be

some dispute as to whether Rentfrow was able to take a job if offered one.  (*Compare* Mot. at 10–

11, *with* Rentfrow Decl. (Doc. No. 97) ¶ 15.)  Nevertheless, Rentfrow fails to even allege any

specific decision not to rehire him on the part of defendants and presents no evidence that such a

decision was made with retaliatory intent.

Accordingly, to the extent plaintiffs independently make such a claim of retaliation,

summary judgment is warranted in defendants' favor.

**E.      Rentfrow's Remaining Claims**

1.      Rentfrow Fails to Establish a Prima Facie Case of Retaliation on His Remaining
        Theories

Defendants also move for summary judgment as to plaintiff Rentfrow's remaining

theories of retaliation under Title VII and FEHA.  Aside from theories involving his termination,

Rentfrow alleges the following forms of adverse employment action by defendant Hutton:  (1)

unwarranted discipline; (2) poor performance reviews; (3) communication of false statements and

untruths; and (4) imposition of unnecessary and burdensome job duties.  (Compl. 5:14–16.)

Generally, these adverse employment actions were allegedly taken at different times between

November 2008, when Rentfrow began making complaints, and October 2010, when Rentfrow

was asked to testify in Hutton's administrative proceedings.

Defendants assume, for the purpose of this motion, that Rentfrow engaged in protected

activity.  However, they argue that based on Rentfrow's deposition testimony and discovery

responses, it is undisputed that he did not suffer an adverse employment action.  As to this second

element of a retaliation claim, a challenged action by an employer must be "materially adverse,"

or one that would dissuade a reasonable worker from exercising protected rights.  *See Burlington*

18

1    *N. & Santa Fe Ry. Co. v. White,* 548 U.S. 53, 68 (2006).  "[T]he significance of any given act of

2    retaliation will often depend upon the particular circumstances." (*Id.* at 69.)

3                          a.      *Unwarranted discipline*

4          Plaintiff Rentfrow testified during his deposition that he was unaware whether defendant

5    Hutton had the power to discipline him.  (Rentfrow Dep. 32:10–15.)  Instead, discipline was

6    issued by the district attorney or Chief Investigator Lunney.  (*Id.* 32:16–18.)  In any event,

7    Rentfrow testified, discipline was never threatened.  (*Id.* 155:5–6.)  In opposing the pending

8    summary judgment motion, Rentfrow offers no evidence that he was subject to discipline for his

9    complaints, aside from passing reference to "on-going retaliation" which he reported to

10   management.  (*See* Rentfrow Decl. ¶ 4.)  Rentfrow has therefore failed to come forward with any

11   evidence on summary judgment raising genuine dispute of material fact as to disciplinary action

12   taken against him.

13                         b.      *Poor performance reviews*

14         Contrary to allegations that he received poor performance reviews, Rentfrow alleges in the

15   complaint that "[d]uring his employment, [Rentfrow] performed his job duties satisfactorily and

16   received good performance reviews."  (Compl. 4:20–21.)  Moreover, Rentfrow testified that he

17   was never denied a promotion and never received a negative performance evaluation while

18   working for the County.  (Rentfrow Dep. 28:24–29:16.)  On summary judgment Rentfrow offers

19   no evidence suggesting that he was the subject of poor performance reviews which could be

20   deemed adverse employment actions.

21                         c.      *Communication of false statements and untruths*

22         Rentfrow also alleges that Hutton wrote false statements about him in connection with

23   Hutton's 2010 administrative appeal of his suspension, in retaliation for Rentfrow's past

24   complaints.  (*See* Compl. 6:7–15; Rentfrow Dep. 98:4–12.)[9]  In moving for summary judgment,

25   defendants contend that even if such statements were made, they either did not result in any

26   _____

27   [9] The court notes that on summary judgment, neither party has presented Hutton's alleged written

28   statement.  Thus, for the purpose of determining whether such a statement constitutes an adverse
     employment action, the court assumes the statement in fact exists as described by the parties.

1    adverse employment action or were protected under state or federal immunities.  (Mot. at 18–19.)

2    Defendants, however, mischaracterize Rentfrow's allegations.  Rentfrow does not allege that

3    Hutton's statements resulted in an adverse employment action—he alleges such statements were

4    the adverse action:  "HUTTON'S statements were completely false and he knew this when he

5    made the statements. . . .  This *was* further retaliation."  (Compl. 6:13–15 (emphasis added).)

6    However, defendant Hutton's alleged statements alone cannot constitute an adverse employment

7    action because they would not deter a reasonable victim from engaging in protected activity,

8    namely seeking relief under Title VII or FEHA.  *See, e.g.*, *Ray v. Henderson*, 217 F.3d 1234,

9    1243 (9th Cir. 2000) (noting that the test for adverse employment action "does not cover every

10   offensive utterance by co-workers, because offensive statements by co-workers do not reasonably

11   deter employees from engaging in protected activity").[10]  In any event, Rentfrow has failed to

12   present evidence of any factual circumstances suggesting Hutton's statements would have had

13   anything more than a trivial effect on a reasonable person in Rentfrow's shoes.  Accordingly, the

14   court grants summary judgment in favor of defendants as to this theory of plaintiff Rentfrow.[11]

15              d.     *Imposition of unnecessary and burdensome job duties*

16          Finally, plaintiff Rentfrow alleges that defendant Hutton subjected him to unnecessary and

17   burdensome job duties as a result of Rentfrow's complaints.  When considering whether an action

18   is *materially* adverse, the Supreme Court cautions that "[a]n employee's decision to report

19   discriminatory behavior cannot immunize that employee from those petty slights or minor

20   annoyances that often take place at work and that all employees experience."  *Burlington*, 548

21   U.S. at 68.  The test for material adversity is an objective one which considers the impact of a

22

23   [10]  In fact, months after the revelation of Hutton's statements, Rentfrow filed complaints with
     DFEH and EEOC, in part based on his involvement in Hutton's administrative appeal.  (Compl.
24   6:16–18.)  This evidence suggests that Rentfrow was not deterred from engaging in protected
     activity.
25

26   [11] Because Hutton's alleged statements do not constitute adverse employment actions, it is
     unnecessary to determine whether such statements are actionable under the privileges or
27   immunities set forth in California Civil Code § 47 and the Supreme Court's decision in *Imbler v.
     Pachtman*, 424 U.S. 409, 439–40 (1976).  (*See* Mot. at 19–20.)  Accordingly, the court declines to
28   address that issue.

1    given action on a reasonable employee.  *Id.* at 68–69.  Defendants argue that none of Hutton's

2    alleged acts amounts to a materially adverse employment action.  The court agrees.

3         Following his initial complaints regarding Hutton's harassment of plaintiff Goins,

4    Rentfrow testified, Hutton began "micromanaging" him multiple times on a daily basis.

5    Rentfrow testified Hutton would "constantly check[] up on" Rentfrow two to three times a day,

6    extensively question Rentfrow's case reports, and attempt to involve himself in Rentfrow's work.

7    (*See* Rentfrow Dep. at 89:11–19, 94:18–95:1, 95:19–86:10, 143:19–143:3.)  In opposing the

8    pending motion, plaintiffs offer no specific evidence suggesting that Hutton did more than give

9    increased attention to Rentfrow.  Such behavior, even if true, would not materially impact a

10   reasonable employee's job duties, and would not dissuade a victim from complaining to the

11   EEOC or DFEH.  *See Burlington*, 548 U.S. at 67–68.

12        Rentfrow also describes instances in which Hutton assigned additional work to him or

13   work known to make Rentfrow uncomfortable.  For example, Rentfrow testified that on five to

14   ten occasions between 2008 and 2012, Hutton questioned whether Rentfrow had enough work.

15   (Rentfrow Dep. 62:1–16.)  In one instance, Hutton assigned a new case to Rentfrow based on

16   Chief Investigator Lunney's belief that Rentfrow was not being fully utilized.  (*Id.* 62:17–63:6.)

17   Rentfrow subsequently spoke to Lunney, who responded that he never expressed such a belief

18   and would resolve the issue.  (*Id.* 63:7–64:9.)  On a separate occasion, Hutton gave Rentfrow an

19   assignment which Rentfrow believed to be outside the scope of his job duties.  (*Id.* 48:18–50:8.)

20   The assignment involved contacting Jason Goins, Diane Goins's ex-husband, with whom

21   Rentfrow was not on good terms.  After Rentfrow approached Lunney about the assignment,

22   Lunney told him to disregard Hutton's request.  (*Id.* 52:8–20.)  However, in opposition to the

23   pending motion, Rentfrow points to no evidence suggesting that he was actually required to

24   perform these assignments. While changes of job duties may constitute adverse employment

25   decisions, *see, e.g.*, *Ray*, 217 F.3d at 1241, the evidence before the court on summary judgment in

26   this case suggests no such changes occurred.  Hutton's alleged attempts to assign new duties to

27   Rentfrow would not alone constitute materially adverse actions because their limited occurrence

28   makes them at most minor workplace annoyances.

1    Further, Rentfrow testified that, upon being reclassified from a welfare fraud investigator

2    to a career criminal investigator in 2009, he was required to continue using an older county

3    vehicle despite expectations that the new position would come with access to a newer vehicle.

4    (Rentfrow Dep. 55:2–21.)  Months after his reclassification, however, Rentfrow was assigned a

5    new car.  (*Id.* 57:3–10.)  In opposition to the pending motion, Rentfrow again identifies no

6    evidence before the court disputing these facts.  Hutton's alleged failure to provide Rentfrow with

7    a new car in the first few months of his job cannot be a materially adverse employment action.

8    As plaintiff Rentfrow himself acknowledges, he still had access to a car for work.  There is no

9    evidence before the court suggesting that access to an older car adversely affected Rentfrow's

10   performance of job duties, or that defendant Hutton's decision in this regard was made for a

11   retaliatory reason.

12   Rentfrow testified that beginning in 2009 and throughout the remainder of his

13   employment, two to three times a week, Hutton would remark that Rentfrow needed to wear a tie

14   at work.  (*Id.* 59:17–60:20.)  Rentfrow recalled Hutton making similar remarks to other

15   employees.  (*Id.* 141:4–6.)  Rentfrow reported these incidents to Lunney, who advised Rentfrow

16   "[n]ot to worry about it."  (*Id.* 61:10–17.)  In opposing summary judgment, plaintiffs offer no

17   evidence to dispute these facts.  Instead, plaintiffs tender a copy of an employee manual

18   applicable to Rentfrow, which includes the following provision relating to dress:

19   
20   > All Bureau of Investigations employees shall dress appropriate to their assignment and duties.  As a general rule "business professional" should be the usual standard of dress for all employees.

21   

22   (Doc. No. 102-2.)  To the extent this evidence is presented to suggest that a tie is not required

23   attire, plaintiffs offer no evidence creating a genuine dispute as to whether Rentfrow was actually

24   required to wear a tie or whether Rentfrow faced consequences beyond being told he was out of

25   compliance with the dress code.  Moreover, in light of his testimony that other faced similar

26   criticism, the court finds no evidence to suggest Rentfrow was disproportionately subjected to

27   treatment regarding the office dress code.  Accordingly, based upon the undisputed evidence

28   /////

1   before the court on summary judgment, Hutton's actions in this regard cannot be considered

2   materially adverse.

3        Finally, allegations of a hostile work environment are certainly cognizable under the anti-

4   retaliation provisions of Title VII. *Ray*, 217 F.3d at 1244.  However, such harassment is

5   actionable "only if it is sufficiently severe or pervasive to alter the conditions of the victim's

6   employment and create an abusive working environment." *Id.* at 1245 (citations and internal

7   quotations omitted).  To the extent plaintiff Rentfrow relies on a theory that some combination of

8   the allegations above gives rise to a hostile work environment, he fails to present sufficient

9   evidence to support such a claim on summary judgment.  While the evidence before the court on

10   summary judgment establishes that in some instances, Hutton repeatedly approached Rentfrow

11   about the same issues, there is no evidence that such behavior was threatening or humiliating, and

12   unreasonably interfere with Rentfrow's ability to carry out his job duties.  In fact, Rentfrow

13   admits that after each instance of bringing his concerns to Lunney's attention, he was no longer

14   required to comply with Hutton's requests.  While the evidence may give rise to an inference that

15   Hutton's behavior toward Rentfrow worsened after Rentfrow began complaining about Hutton's

16   harassment of Goins, none of the evidence before the court suggests that this behavior was so

17   severe or offensive that it would have deterred a reasonable employee from exercising his rights

18   under Title VII or FEHA.

19        In sum, because Rentfrow has failed to establish a prima facie case of retaliation as to any

20   alleged adverse employment action outside of the termination context, summary judgment as to

21   his remaining theories of retaliation must be granted in favor of defendants. *See Celotex*, 477 U.S.

22   at 322.

23        2.  Rentfrow's Claim of Failure to Prevent Retaliation

24        Finally, Rentfrow alleges under FEHA that defendants County and DAO failed to prevent

25   retaliation against him.  Because the court concludes that Rentfrow's claims of retaliation cannot

26   stand as a matter of law, summary judgment as to his claim for failure to prevent retaliation is

27   also warranted in favor of defendants, and those claims must likewise be dismissed. *See Leland*,

28   576 F. Supp. 2d at 1103.

23

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CONCLUSION**

For the reasons stated above, defendants' motion for partial summary judgment (Doc. No. 89) is granted.  Accordingly, defendants are granted summary judgment in their favor as to plaintiff Goins's claims of retaliation under Title VII and FEHA in connection with her termination and those claims are dismissed.  Defendants are granted summary judgment in their favor as to plaintiff Rentfrow's claims of retaliation under Title VII and FEHA, and failure to prevent retaliation under FEHA, and those claims are dismissed.  In the absence of any surviving claims brought on his part, plaintiff Rentfrow is dismissed from this action.

IT IS SO ORDERED.

Dated:   **May 4, 2016**

_____
UNITED STATES DISTRICT JUDGE